IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

—————————————————————————————

ANNE L. CIRULLI,

                    Plaintiff,

                                        Civil Action No.
        v.                              1:16-CV-1483 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

—————————————————————————————

APPEARANCES:                            OF COUNSEL:

FOR PLAINTIFF:

ANNE L. CIRULLI, *Pro se*
1565 Sawkill Road
Kingston, NY 12401

FOR DEFENDANT:

HON. GRANT JAQUITH              JEAN M. DEL COLLIANO, ESQ.
Acting United States Attorney   Special Assistant U.S. Attorney
P.O Box 7198
100 S. Clinton Street
Syracuse, New York 13261

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

<u>DECISION AND ORDER</u>

Plaintiff Anne L. Cirulli, who is proceeding *pro se*, has commenced this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of an adverse determination by the Acting Commissioner of Social Security.[1] Plaintiff challenges the agency's determination that she was not disabled at the relevant times and thus ineligible to receive disability insurance benefits under the Social Security Act. For the reasons set forth below, defendant's motion for judgment on the pleadings is granted, the Acting Commissioner's determination is affirmed, and plaintiff's complaint is dismissed.

I.      <u>BACKGROUND</u>

Plaintiff was born in July 1960, and at the time of her alleged disability onset date of September 1, 2014, was fifty-four years old. Administrative Transcript ("AT") 155. Plaintiff is five feet, eight inches in height, weighs 190 pounds, and is right-hand dominant. AT 39, 196, 207. Plaintiff graduated from high school and completed up to two years of college course work and achieved a medical typist certificate. AT 35-36, 341.

---

[1]      This matter is before me on consent of the parties pursuant to 28 U.S.C. § 636(c). Dkt. Nos. 5, 8.

Plaintiff was involved in a motor vehicle accident on July 24, 2012, resulting in an injury to her right knee. AT 213, 420, 444. Following that accident, plaintiff sought treatment from her general physician, Dr. Rosemary Deleo, who treated her with oral medication, ordered physical therapy, and arranged for magnetic resonance imaging ("MRI") testing of the knee. AT 420. The MRI testing revealed a medial meniscus tear and a probable small lateral meniscus tear. AT 281. Plaintiff was subsequently seen by Dr. Mark Aierstok, an orthopedic surgeon with Orthopedic Associates of Dutchess County, who surgically repaired her meniscus on February 2, 2013. AT 41, 420. Plaintiff has been informed that she will need a total right knee replacement in the future. AT 47, 420.

Following her accident, plaintiff also began to complain of moderate to severe neck pain. AT 212, 420. MRI testing conducted of plaintiff's cervical spine on October 28, 2012, revealed some degenerative changes, a small bulge at C3-4 with right foraminal stenosis but minimal impression on the posterior cord, a mild bulge at C4-5 with some foraminal stenosis but mild impression on the left posterior cord, and disc narrowing at C5-6 and C6-7 with some bulge/osteophytes and mild central and severe foraminal stenosis. AT 282. The report of that MRI testing concluded with the following impression:

> Multilevel degenerative changes and stenosis.
> Compression of the cord is very mild without
> myelomalacia. Equivocal for recent bone trauma in
> the C7 posterior spinous process and C7
> ligamentum nuchae.

AT 283.

In or about 2006, plaintiff also began to experience lumbar back pain. AT 347. MRI testing conducted on July 24, 2006, revealed some bulging discs and the following impression:

> Severe bilateral facet arthropathy from L3 to S1.
> Forminal stenoses at L4-5 and L5-S1 and mild to
> moderate central spinal stenosis at L4-5 are about
> the same as on the 2004 MR.

AT 280. An x-ray of plaintiff's lumbosacral spine, taken on April 2, 2015, revealed some degenerative changes with Grade I spondylolisthesis of L4 over L5 and facet joint arthropathy. AT 352.

In addition to these conditions, plaintiff has now developed difficulties with her left knee. Following attempts at less invasive treatment, plaintiff underwent surgery by Dr. Aierstok on April 15, 2015, to repair a medical meniscal tear. AT 41, 360-61. Plaintiff is required to use a cane to ambulate. AT 46. It has also been recommended that plaintiff undergo a left knee replacement. AT 47. Plaintiff has been administered cortisone injections for her left knee condition, but has not experienced any relief from those shots. AT 42. Plaintiff utilizes braces on both knees as

prescribed by Dr. Aierstok. AT 48. Plaintiff also complains of arthritis in both hands, as well as in her lumbar and cervical spine area, coupled with numbness and tingling from her neck and back into her feet and hands. AT 52-53.

Plaintiff has received medical treatment for her various conditions from several sources. Plaintiff's knee conditions have been treated by Dr. Aierstok and Dr. Richard Dentico, also with Orthopedic Associates, who has provided plaintiff with steroid injections and a nerve block. AT 369-70, 374-75. Plaintiff's lumbar spine condition has been treated by Dr. Perkins, who states that plaintiff is a candidate for spinal surgery. AT 433-37. Dr. Deleo, plaintiff's family physician, has seen plaintiff for a variety of conditions. AT 382-403, 438-40. Plaintiff was also seen by Dr. Ze'er Weitz in January 2015 for evaluation of her back and knee pain, AT 298-99, and again by Dr. John Ioia at the Kingston Well and Joint Center on April 3, 2013. AT 418-19. In his report, Dr. Ioia, noted that "[u]ltimately joint replacement will be considered but the patient is quite oyung [sic] and healthy." AT 419.

In addition to her physical conditions, plaintiff also suffers from depression and anxiety. AT 42-43. Although she has been prescribed Celexa and BuSpar for those conditions, plaintiff has not undergone any

specialized mental health treatment. *Id.* Plaintiff states that those medications have helped her with her mental health symptoms. *Id.*

Plaintiff has also been prescribed Mobic, Flexeril, and Percocet. AT 43, 45, 198, 341, 347-48. According to plaintiff, the medications she takes cause her to experience dizziness and drowsiness, and preclude her from driving. AT 45.

For several years, plaintiff was employed as a medical receptionist for River Radiology, located in Kingston, New York. AT 38-39. In that position, she worked mostly in a seated position and was required to carry some files and medical records. AT 39. Plaintiff left her employment with River Radiology following the motor vehicle accident and became a co-owner of a pizzeria with her husband. AT 36-37, 46, 57. Since September 2014, however, plaintiff has had no involvement in the operation of the business. AT 40, 197, 213, 341.

## II.    PROCEDURAL HISTORY

### A.    Proceedings Before the Agency

Plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act on December 24, 2014. AT 155-56. In her application, plaintiff alleged a disability onset date of July 24, 2012.[2] *Id.*

---

[2]    The alleged onset date was later amended to September 1, 2014. AT 17.

Plaintiff's claim was initially denied on April 9, 2015. AT 73-83. Thereafter, a hearing was conducted on June 24, 2016, before Administrative Law Judge ("ALJ") Robert Gonzalez. AT 32-72. Both plaintiff and a vocational expert testified at the hearing. *Id.* ALJ Gonzalez subsequently issued a written decision on July 25, 2016, in which he found that plaintiff was not disabled at the relevant times and therefore not entitled to the benefits sought. AT 14-31. *Id.* The ALJ's opinion became a final determination of the agency on October 18, 2016, upon the denial by the Social Security Administration Appeals Council of plaintiff's request for review of the decision. AT 1-6.

B.     Proceedings in This Court

Acting *pro se*, plaintiff commenced this action on December 12, 2016. Dkt. No. 1. On March 30, 2017, counsel for the Acting Commissioner filed an administrative transcript of the evidence and proceedings before the agency.[3] Dkt. No. 12. With the filing of plaintiff's brief on April 20, 2017, Dkt. No. 15, and that on behalf of the Acting

---

[3]     This matter has been treated in accordance with the procedures set forth in General Order No. 18. Under General Order No. 18, in an action such as this, once issue has been joined and the parties have submitted their briefs, the court considers the case as if both parties have submitted a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Commissioner on May 31, 2017, Dkt. No 16, the matter is now ripe for determination.

III.    DISCUSSION

A.    Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner of Social Security is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Martone*, 70 F. Supp. 2d at 148 (citing *Johnson*, 817 F.2d at 986). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if

acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel,* 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401(1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co.*, 308 U.S. at 229). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed. 42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148. In such a case the

court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his reasoning. *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)). A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level. *See Lisa v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991). Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency. *See Parker*, 626 F.2d at 235; *see also Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

    B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

In addition, the Social Security Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* at § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need not proceed any further. *Id.* at §§ 404.1520(b), 416.920(b). If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts her physical or mental ability to perform basic work activities. *Id.* at §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id. at* §§

404.1520(d), 416.920(d), Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." *Id.* at §§ 404.1520(d), 416.920(d); *see also Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's residual functioning capacity ("RFC") precludes the performance of her past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work. *Id.* at §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Burgess v. Astrue*, 537 F.3d 117, 118 (2d Cir. 2008); *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been satisfied, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work. *Burgess*, 77 F.3d at 118; *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    The ALJ's Decision

In his decision, ALJ Gonzalez applied the familiar five-step sequential test for determining the issue of disability, as described above. AT 18-19. The ALJ first concluded that plaintiff had not engaged in substantial gainful activity since September 1, 2014, the amended alleged onset date of her disability. AT 19. At step two he found that plaintiff suffers from several severe impairments, including left knee osteoarthritis, status post left knee arthroscopic surgery, status post right knee arthroscopic surgery, degenerative disc disease and stenosis of the lumbar spine, degenerative disc disease of the cervical spine, and chronic pain syndrome. *Id.* In arriving at that conclusion ALJ Gonzalez rejected, as not sufficiently severe to meet even the modest requirements at step two, the physical impairments of hypertension and hyperlipidemia, which he observed were stable and/or well-controlled with medication. AT 20. ALJ Gonzalez also concluded that plaintiff's mental impairments of depression and anxiety are non-severe after determining that they do not, even in combination, cause more than a minimal limitation in plaintiff's ability to perform basic mental work activities. AT 20. In arriving at his step-two determination, ALJ Gonzalez accorded great weight to the opinions authored by K. Lieber-Diaz, Ph.D., a state agency mental consultant, who

completed a Psychiatric Review Technique regarding plaintiff's limitations in the areas of daily living, social functioning, and maintaining concentration, persistence, or pace, and discerned no repeated episodes of decompensation, as well as Lauren Stack, Ph.D., who conducted a psychiatric evaluation of the plaintiff. AT 21.

At step three of the sequential analysis, ALJ Gonzalez concluded that plaintiff's conditions do not meet or medically equal any of the listed, presumptively disabling conditions set forth in the Commissioner's regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1. AT 21. ALJ Gonzalez specifically considered listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 12.04 (depression, bipolar related disorders) and 12.06 (anxiety and obsessive/compulsive disorders). AT 21. The ALJ then determined that plaintiff retains a RFC to perform sedentary work, except that she can only occasionally climb and descend stairs, occasionally push and pull, and cannot stoop, crouch, kneel, crawl, drive motor vehicles, or work at unprotected heights, and requires a cane to ambulate.[4] AT 21-22.

---

[4] Sedentary work is defined by regulation as follows:

(a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and

14

Applying that RFC, aided by the testimony of a vocational expert, ALJ Gonzalez concluded at step four that plaintiff is capable of performing her past relevant work as a medical receptionist, characterized by the vocational expert as sedentary and semi-skilled, both as generally performed and based upon her hearing testimony, as it was actually performed by plaintiff. AT 26. The ALJ therefore concluded, without proceeding to step five of the sequential analysis, that plaintiff was not disabled at the relevant times. AT 27.

   D.   Plaintiff's Contentions

In her letter brief, submitted *pro se*, plaintiff claims that she was to undergo a left-knee replacement in June 2017, needs a right-knee total replacement, and will undergo lumbar surgery.[5] Dkt. No. 15. She contends that, as a result of her physical and mental impairments, she is unable to sit for longer than thirty minutes at a time, cannot stand for any length of

---

standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). In addition, a subsequent ruling has clarified that sedentary work generally involves periods of standing or walking for a total of two hours in an eight-hour work day, with sitting up to a total of approximately six hours in a similar period. Social Security Ruling 83-10.

[5]     In a subsequent letter submitted to the court on or about July 27, 2017, plaintiff confirms that she underwent the contemplated left-knee replacement surgery. Dkt. No. 20.

time, cannot walk without pain, and is continuously drowsy as a result of the medications that she has been prescribed. *Id.*

E.     Analysis

1.     Step-Two Analysis

In her letter brief, plaintiff disputes the step-two finding that she has no limitations in the activities of daily living, claiming that she has difficulties getting out of bed and showering without assistance. Dkt. No. 15 at 1. At step two, the ALJ appropriately considered the limitations resulting from plaintiff's mental impairments in her ability to perform activities of daily living, maintain social functioning, and maintain concentration, persistence, or pace, and additionally examined whether plaintiff had experienced any repeated episodes of decompensation – the four relevant inquiries under the prescribed special technique, tracking the paragraph B criteria for evaluating mental disorders under the Commissioner's regulations. In doing so he relied heavily upon opinions of Dr. Lieber-Diaz, who reviewed plaintiff's medical records and concluded that she has only mild restrictions in the three broad domains of daily living; social functioning; and concentration, persistence, and pace. AT 20-21; *see* AT 79. While it is true that the ALJ found no limitations in those three areas, even a finding of a mild limitation in all three, as found by Dr.

Lieber-Diaz, AT 79, would not be sufficient to find disability. To support a presumptive disability finding under Listings 12.04 and 12.06, for example, addressing affective and anxiety-related disorders, respectively, a claimant must suffer from a marked restriction in at least two of the three domain areas under discussion. *See* 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.04(B); *see also* 20 C.F.R. § 404.1520(c). The opinions of Dr. Lieber-Diaz, though not an examining source, can provide substantial evidence to support the determination by the Commissioner that the paragraph B criteria were not met in this case. *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983); *accord, Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011).

The ALJ's determination regarding the severity of plaintiff's mental condition is also supported by the results of a consultative examination by Dr. Lauren Stack. During her examination, Dr. Stack noted that plaintiff's demeanor was cooperative and manner of relating was adequate; she was well-groomed; her motor behavior was normal; and her eye contact was appropriate. AT 342. Dr. Stack also observed that plaintiff's thought processes appeared coherent and goal-directed with no evidence of hallucinations, delusions, or paranoia; her affect was of full range and appropriate in speech and thought content; she appeared oriented to

person, place, and time; her attention and concentration were mildly

impaired due to emotional distress secondary to pain, as were her recent

and remote memory skills; her cognitive functioning was average; and her

insight and judgment were fair. *Id.* at 342-43. Dr. Stack concluded by

rendering the following medical source opinion:

> The claimant has no impairment in her ability to
> follow and understand simple directions and
> instructions, perform simple tasks independently,
> or make appropriate decisions. She has mild
> impairment in her ability to maintain attention and
> concentration, learn new tasks, relate adequately
> with others, maintain a regular schedule, and
> appropriately deal with stress. These difficulties are
> caused by symptoms of depression and anxiety.

AT 344. Dr. Stack diagnosed plaintiff as suffering from an "[a]djustment

disorder with mixed anxiety and depressed mood." *Id.*

The ALJ's finding of non-severity of plaintiff's mental condition is also

supported by plaintiff's testimony offered at the hearing. Plaintiff stated

that, with medication, she had been able to control her feelings of

depression and anxiety. AT 43, 439. In addition, notes of various treating

sources, including Drs. Weitz, Deleo, Mendoza, and Dentico, have, on

several occasions found plaintiff's mood to be normal and her mental

status unremarkable. *See, e.g.,* AT 299, 367, 372, 391, 423.

In sum, I conclude that the ALJ's determination regarding the non-severity of plaintiff's mental condition at step two is supported by substantial evidence.[6]

### 2. RFC Finding

Plaintiff next appears to challenge the ALJ's finding regarding her RFC, which served as the lynchpin of his determination that plaintiff is not disabled.

A claimant's RFC represents a finding of the range of tasks she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. § 404.1545(a). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations that could interfere with work activities on a regular and continuing basis. *Id.*; *Martone*, 70 F. Supp. 2d at 150.

To properly ascertain a claimant's RFC, an ALJ must assess plaintiff's exertional capabilities, which include her ability to sit, stand, walk, lift, carry, push, and pull. 20 C.F.R. §§ 404.1545(b), 404.1569a. Nonexertional limitations or impairments, including impairments that result

---

[6]    As the Commissioner notes, any error at this stage would be harmless in this case because the ALJ found other conditions to be sufficiently severe at step two and continued with the sequential analysis, considering the effects of all of plaintiff's impairments in formulating plaintiff's RFC and in connection with this step-four determination. *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013).

in postural and manipulative limitations, must also be considered. *Id.*; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). When making an RFC determination, an ALJ must specify those functions that the claimant is capable of performing; conclusory statements concerning her capabilities, however, will not suffice. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris*, 728 F.2d at 587). An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations. *Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990) (McAvoy, J., *adopting report and recommendation by* Di Bianco, M.J.)).

As the Second Circuit has noted, it is the plaintiff who bears the burden of demonstrating limitations that must be included in an RFC. *Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010); *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). In this instance, having carefully reviewed the available medical evidence, I conclude that the physical and mental components of the ALJ's RFC finding are supported by substantial evidence, and plaintiff has failed to carry her burden of demonstrating the existence of more limited restrictions in her ability to perform work-related functions.

To be sure, plaintiff suffers from several objectively confirmed conditions associated with her cervical and lumbar spines, as well as both of her knees. It may be, as plaintiff asserts, that she does suffer from some degree of discomfort as a result of those conditions. The fact that she suffers from discomfort, however, does not automatically qualify her as disabled because "disability requires more than mere inability to work without pain." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983). In addition, the fact that plaintiff may be undergoing knee replacements and/or lumbar surgery do not, in and of themselves, qualify her as disabled. To establish disability, the plaintiff must demonstrate the existence of a condition that is reasonably expected to persist for twelve months or more. 20 C.F.R. §§ 404.1509, 416.909. In this case, those conditions appear to be fairly transitory and, hopefully, reduce plaintiff's pain.

It is clear that, in arriving at his RFC determination, the ALJ considered all available objective evidence in the record, including MRI testing results, the opinions and notes of plaintiff's treating physicians, and those of consultative examiner Dr. Figueroa. The opinions of Dr. Figueroa, which were afforded "significant weight" based upon their consistency with other evidence in the record, found no limitation in plaintiff's ability to sit for

the approximately six hours required to perform sedentary work. AT 350. To the extent sedentary work requires standing or walking for two hours out of an eight-hour work day, Dr. Figueroa noted that plaintiff is able to ambulate with a cane and was able to get on and off the examination table without assistance and rise from her chair without difficulty. AT 348-49. Likewise, Drs. Perkins and Dentico both noted that plaintiff walks with a non-antalgic gait. AT 368, 372, 434; *see also* AT 391 (Dr. Deleo noting some limitations in the ability for plaintiff to walk but finding her gait and station to be normal). Similarly, treating physicians noted that plaintiff has normal range of motion in her hips, normal range of motion in her left knee, negative straight leg raises bilaterally, and is able to get on and off an examination table independently. AT 357, 363, 367, 391, 434-35, 445. Drs. Weitz, Dentico, and Perkins have also noted that plaintiff maintains generally full strength in her lower extremities. AT 299, 367, 372, 434.

Plaintiff's testimony suggests far greater limitations than those found by ALJ Gonzalez. Undeniably, an ALJ must take into account a plaintiff's subjective complaints in rendering the five-step disability analysis. 20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d). When examining the issue, however, the ALJ is not required to blindly accept the subjective testimony of a claimant. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Rather, an

ALJ retains the discretion to "weigh the credibility of the claimant's testimony in light of the other evidence in the record." *Genier*, 606 F.3d at 49.

A plaintiff's subjective complaints are entitled to great weight when they are consistent with and supported by objective clinical evidence demonstrating that she has a medical impairment that "could reasonably be expected to produce the pain or other symptoms alleged."[7] 20 C.F.R. §§ 404.1529(a), 416.929(a); *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir. 1992) (citing *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)). The ALJ must consider other factors to assess a claimant's subjective symptomology, including (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of any symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken; (5) other treatment received; and (6) other measures taken to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other relevant factors, the ALJ may accept or

---

[7]     Under the Social Security Act, a claimant must provide medical evidence supporting a finding of disability. 42 U.S.C. § 423(d)(5)(A).

reject claimant's subjective testimony. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); *Martone*, 70 F. Supp. 2d at 151. If such testimony is rejected, however, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence. *Tome v. Schweiker*, 724 F.2d 711, 713 (2d Cir. 1984); *accord, Martone*, 70 F. Supp. 2d at 151. Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review. *Aponte v. Sec'y, Dep't of Health & Human Servs.,* 728 F.2d 588, 591 (2d Cir. 1984); *accord, Monette v. Colvin*, 654 F. App'x 516, 519 (2d Cir. 2016).

Addressing plaintiff's reported symptomology, ALJ Gonzalez first noted plaintiff's claims. AT 22. He then proceeded to address the various medical evidence in the record, and concluded that, while plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her reports were not fully credible.[8] *Id.* at 22-

---

[8]    It is clear that the ALJ considered the various MRI testing results and x-rays in arriving at his decision. *See, e.g.,* AT 22 (referring to AT 280 (lumbar spine MRI)); AT 23 (referring to AT 314 (bilateral hip x-ray)); AT 24 (referring to AT 364-65 (MRI of left knee)); AT 24 (referring to AT 378-79 (MRI of lumbar spine)); AT 25 (referring to AT 443 (x-rays of the left knee)).

26. After doing so, he concluded that plaintiff's claims, to the effect that she primarily lays down all day, does no housework, can only walk a few feet, and can only lift one pound, were not fully credible. AT 25. That determination is well supported by substantial evidence, including the opinions of consultative examiner Dr. Figuerora, which can constitute substantial evidence supporting an RFC finding. *Mongeur*, 412 F. App'x at 405.

Plaintiff argues that the Commissioner's determination failed to take into account her inability to drive, and thus commute to work. To the contrary, however, the ALJ did address plaintiff's difficulties in driving and included a limitation related to that difficulty in his RFC finding. AT 21-22. In any event, there is record evidence suggesting that, according to plaintiff herself, she goes out alone, is able to ride in the car when she travels, and, indeed, does drive. AT 210-11.

In sum, the ALJ's credibility finding and RFC determination draw support from substantial evidence in the record.

### 3.    Step-Four Determination

At step four, the ALJ relied on the testimony of a vocational expert when determining that plaintiff is able to perform her past work as a receptionist, both as performed in the past and as generally performed. AT

26. The vocational expert testified that a person with plaintiff's RFC would be able to fulfill the duties of plaintiff's past work as a receptionist, as generally performed. AT 63-64. Such testimony is appropriate and provided substantial evidence for the step-four determination by the Commissioner in light of my finding that the RFC is supported by substantial evidence. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010). Accordingly, the determination at step four that plaintiff is not disabled is supported by substantial evidence.

IV.  <u>SUMMARY AND ORDER</u>

Having carefully considered plaintiff's arguments and reviewed the available evidence, I conclude that the finding that plaintiff is capable of performing her past relevant work, and is therefore not disabled, is the product of the application of proper legal principles and is supported by substantial evidence. Accordingly, it is hereby

ORDERED that defendant's motion for judgment on the pleadings is GRANTED; and it is further

ORDERED that the Acting Commissioner's determination is AFFIRMED, and plaintiff's complaint in this matter is DISMISSED; and it is further.

ORDERED that the clerk of the court serve a copy of this decision and order upon the parties in accordance with this court's local rules.

Dated:    September 7, 2017
            Syracuse, New York

David E. Peebles
U.S. Magistrate Judge